Bryan M. Sullivan, State Bar Number 209743
  *bsullivan@earlysullivan.com*
Zachary C. Hansen, State Bar Number 325128
  *zhansen@earlysullivan.com*
EARLY SULLIVAN WRIGHT
  GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone:  (323) 301-4660
Facsimile:  (323) 301-4676

Attorneys for Defendant
LEARNMORE MWANYENYEKA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEBOHANG MORAKE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>LEARNMORE MWANYENYEKA, an individual,<br><br>Defendant. | Case No. 2:26-cv-02795-JLS-AS<br><br>**DEFENDANT LEARNMORE MWANYENYEKA'S NOTICE OF MOTION AND MOTION UNDER SECTION 425.16 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE  AND MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Date:  June 26, 2026<br>Time: 10:30 a.m.<br>Ctrm.: 8A<br><br>[*Declaration of Learnmore Mwanyenyeka; Declaration of Bryan M. Sullivan; Declaration of Zachary C. Hansen; and [Proposed] Order filed and served concurrently herewith*]<br><br>District Judge: Hon. Josephine L. Staton<br>Magistrate Judge: Hon. Alka Sagar |

5845454.1

ANTI-SLAPP MOTION AND MOTION TO DISMISS

**TO ALL INTERESTED PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 26, 2026 at 10:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 8A of the above-entitled Court, located at 350 W. 1st Street, Los Angeles, California 90012, Defendant Learnmore Learnmore Mwanyenyeka aka Learnmore Jonasi ("Jonasi"), by and through his attorneys of record, hereby moves this Court for an order striking Plaintiff Lebohang Morake's ("Plaintiff") Complaint pursuant to California's Anti-SLAPP statute (Cal. Code. Civ. Proc. § 425.16 et seq.) and to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Under California's anti-SLAPP statute, Defendants are entitled to dismissal because all of Plaintiff's claims arise from protected speech—namely, Jonasi's comedic commentary on a podcast addressing a matter of public and cultural interest—and Plaintiff cannot show any probability of prevailing. The challenged statements are non-literal, satirical, and hyperbolic expression fully protected by the First Amendment, and no reasonable listener would interpret them as statements of fact. Plaintiff's defamation per se and trade libel claims fail because Jonasi never referred to Plaintiff personally, the statements are not provably false, and Plaintiff cannot identify any specific, quantifiable damages or any instance where a third party declined to deal with him as a result. Plaintiff also cannot establish actual malice, as substantial public sources pre-dating the podcast support Jonasi's translation, defeating any claim of knowing or reckless falsehood. Plaintiff's intentional interference claim likewise fails because it rests on speculative, hypothetical future opportunities rather than a concrete economic relationship, alleges no actual disruption, identifies no independently wrongful conduct, and pleads no proximate causation or economic loss. Because Plaintiff cannot satisfy the second prong of the anti-SLAPP analysis—demonstrating minimal merit for any claim—and because the

5845454.1

2

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

Complaint also fails to state a claim under Rule 12(b)(6), the Court should grant the anti-SLAPP motion and strike the Complaint in its entirety.

The Complaint should be dismissed under Rule 12(b)(6) because it fails to plausibly state any claim for relief. Although courts accept well-pleaded facts as true, conclusory allegations, labels, and internal contradictions do not suffice, and the Complaint relies almost entirely on such deficiencies. All claims are barred by the First Amendment because they arise from non-literal, satirical, and comedic podcast commentary that no reasonable listener could interpret as factual, and the challenged statements are not provably false. Independently, Plaintiff's Lanham Act claim fails because the Complaint does not allege commercial speech, competition, advertising or promotion, a relevant purchasing public, or nonconclusory damages. The defamation per se claim fails because Jonasi did not make statements "of and concerning" Plaintiff, any alleged defamatory meaning depends on extrinsic context, Plaintiff fails to plead special damages, and falsity and actual malice are not plausibly alleged. The trade libel claim likewise fails for lack of a specific false disparagement of an identifiable product or service, heightened pleading of publication, special damages, causation, and malice. Finally, the intentional interference claim fails because Plaintiff alleges only speculative future opportunities, no actual disruption, no independently wrongful conduct, and no proximate economic harm. Taken together, these defects require dismissal of the Complaint in its entirety under Rule 12(b)(6), without leave to amend because facts supporting these claims cannot be retroactively manufactured by Plaintiff to satisfy the foregoing pleading standards.

This application is based upon the accompanying Memorandum of Points and Authorities, the declarations of Zachary C. Hansen, Bryan M. Sullivan, and Learnmore Jonasi, the Request for Judicial Notice, as well as all exhibits filed concurrently herewith, the pleadings and other documents on file with the Court, oral argument at the time of the hearing, and upon such further matters that the Court may consider in ruling on this Motion.



EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

5845454.1

3

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

Pursuant to Central District of California Local Rule 7-3, on March 31, 2026, counsel for Jonasi sent a letter to Michael A. Younge, then-counsel of record for Plaintiff, outlining the basis for Jonasi's proposed Motion to Dismiss and asked to schedule a conference call to discuss further. See Declaration of Zachary C. Hansen ("Hansen Decl."), ¶2, Exh. G. Thereafter, on April 3, 2026, counsel for Jonasi sent a follow-up email to Mr. Younge outlining the basis for Jonasi's proposed anti-SLAPP motion. Hansen Decl., ¶3, Exh. H. Due to Mr. Younge being out of the country, the Parties agreed to extend the deadline for Jonasi to respond to the Complaint until May 8, 2026, by joint stipulation. Hansen Decl., ¶4. On April 20, 2026, respective counsel for Plaintiff and Jonasi conducted a telephonic meet and confer conference call regarding Jonasi's proposed Motion to Dismiss and anti-SLAPP Motion, during which conference Mr. Younge agreed to amend Plaintiff's Complaint. *Id*. However, on April 30, 2026, Mr. Younge informed Jonasi's counsel of record that Plaintiff had terminated him as his attorney in this matter and had hired a new attorney to represent him. *Id*. As of the filing of this Motion, no new attorney for Plaintiff has contacted Jonasi's counsel of record and thus, out of an abundance of caution to avoid waiving any defenses and/or arguments, Jonasi hereby files the instant Motion. *Id*.

Dated:  May 5, 2026                                    By:_____

BRYAN M. SULLIVAN
(State Bar No. 209743)
bsullivan@earlysullivan.com
ZACHARY C. HANSEN
(State Bar No. 325128)
zhansen@earlysullivan.com
EARLY SULLIVAN WRIGHT
 GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Fl.
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

*Attorneys for Defendant*
*Learnmore Mwanyenyeka*



# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................10

I.    INTRODUCTION ..............................................................................................10

II.   STATEMENT OF ALLEGED FACTS .............................................................10

III.  THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE .........................................................12

    A.    All Of Plaintiff's Allegations Arise From Jonasi's Joke, Which Are Protected By The First Amendment ........................................................13

    B.    Plaintiff Cannot Present Any Evidence Showing That Any Of His Claims Have Minimal Merit .......................................................................14

        1.    The First Amendment Bars All of Plaintiff's State Law Claims 14

        2.    Plaintiff Does Not Have Any Evidence Supporting His Defamation Per Se Claim ........................................................17

        3.    Plaintiff Does Not Have Any Evidence Supporting His Trade Libel Claim ...................................................................19

        4.    Plaintiff Cannot Prove That Jonasi Acted With Actual Malice In Making The Statements About The Song's Translation As Required For The Defamation Per Se And Trade Libel Claims 20

        5.    Plaintiff's Claim for Intentional Interference with Prospective Economic Advantage Fails ...........................................21

    C.    The Anti-SLAPP Motion Should Also Be Granted Because The Complaint Fails To State A Claim Against Jonasi ...............................23

IV.   THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM ...........................................23

    A.    The First Amendment Bars All Of Plaintiff's Claims Because Jonasi's Statements Are Constitutionally Protected Speech ..............................24

    B.    Plaintiff's Claim For Misleading Representation In Violation Of The Lanham Act Fails Because Plaintiff Has Not And Cannot Allege That Jonasi's Statement Was For Commercial Purposes .............................25

    C.    Plaintiff's Second Cause Of Action For Defamation Per Se Fails .......27

    D.    Plaintiff Fails To State A Claim For Trade Libel .................................28

    E.    Plaintiff Fails To State A Claim For Intentional Interference With Prospective Economic Advantage ........................................................29

V.    CONCLUSION ..................................................................................................31

CERTIFICATE OF COMPLIANCE ..........................................................................32

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

5845454.1

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*1-800 Get Thin, LLC v. Hiltzik,*
2011 U.S. Dist. LEXIS 81982, at *11–13 (C.D. Cal. July 21, 2011) .....................26

*Alfasigma USA, Inc. v. First Databank, I-nc.,*
525 F. Supp. 3d 1088, 1101–03 (N.D. Cal. 2021).................................................26

*Allen v. Sunbelt Commc'ns Co.,*
2008 U.S. Dist. LEXIS 144604, at *10–12 (C.D. Cal. 2008).................................28

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009) .....................................................................................23

*Barnes-Hind, Inc. v. Superior Court,*
181 Cal. App. 3d 377, 387 (1986).........................................................................17

*Bently Reserve LP v. Papaliolios,*
218 Cal. App. 4th 418 (2013)...............................................................................18

*Bio Medical Research, Ltd. v. Thane Int'l, Inc.,*
249 F. App'x 539, 541 (9th Cir. 2007)........................................................21, 22, 30

*Brill Media Co., LLC v. TCW Group, Inc.,*
132 Cal. App. 4th 324, 339 (2005)........................................................................13

*Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
637 F.3d 1047, 1054–55 (9th Cir. 2011) ...............................................................24

*Children's Health Defense v. Meta Platforms, Inc.,*
112 F.4th 742, 764 (9th Cir. 2024)........................................................................26

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
173 F.3d 725, 735 (9th Cir. 1999).........................................................................26

*Copp v. Paxton,*
45 Cal. App. 4th 829, 845-46 (1996).....................................................................20

*Couch v. San Juan Unified Sch. Dist.,*
33 Cal. App. 4th 1491, 1500 (1995) ......................................................................14

*Crown Imports, LLC v. Superior Court,*
223 Cal. App. 4th 1395 (2014)........................................................................21, 29

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
539 U.S. 23, 37 (2003) .........................................................................................25

*Deerpoint Grp., Inc. v. Agrigenix, LLC,*
393 F. Supp. 3d 968, 982 (N.D. Cal. 2019)...........................................................29

*Dickinson v. Ryan Seacrest Enters., Inc.,*
2019 U.S. Dist. LEXIS 150174 (C.D. Cal. 2019) ...................................................16

*Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.,*
71 Cal. App. 5th 528 (2021).........................................................................21, 22, 29

*Eisenberg v. Alameda Newspapers, Inc.,*
74 Cal. App. 4th 1359 (1999).........................................................................17, 25

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.,*
69 F.4th 665, 671 (9th Cir. 2023)..........................................................................22

5845454.1

6

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

*Equilon Enterprises, LLC v. Consumer Cause, Inc.*,
29 Cal. 4th 53, 67 (2002)......................................................................................13

*Erlich v. Etner*,
224 Cal. App. 2d 69, 73 (1964) .............................................................................28

*FilmOn.com Inc. v. DoubleVerify Inc.*,
7 Cal. 5th 133, 149 (2019)....................................................................................13

*Films of Distinction, Inc. v. Allegro Film Productions, Inc.*,
12 F. Supp. 3d. 1068, 1082 (C.D. Cal. 1998)......................................................14

*Gardner v. Martino*,
563 F.3d 981, 992 (9th Cir. 2009) ........................................................................14

*George v. eBay, Inc.*,
71 Cal. App. 5th 620, 635–36 (2021)....................................................................21

*George v. Int'l Soc'y for Krishna Consciousness*,
213 Cal. App. 3d 729, 734 (1989)........................................................................27

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323, 339 (1974) ......................................................................................20

*GetFugu, Inc. v. Patton Boggs LLP*,
220 Cal. App. 4th 141 (2013)...............................................................................18

*Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*,
59 Cal. 4th 277, 291–92 (2014).......................................................19, 20, 28, 29

*Herring Networks, Inc. v. Maddow*,
8 F.4th 1148, 1157–58 (9th Cir. 2021) .................................................................14

*Hughes v. Hughes*,
122 Cal. App. 4th 931 (2004)...............................................................................18

*Hustler Magazine v. Falwell*,
485 U.S. 46, 50 (1988)..........................................................................................14

*Jackson v. Mayweather*,
10 Cal. App. 5th 1240, 1259 (2017) .....................................................................20

*Jackson v. Paramount Pictures Corp.*,
68 Cal. App. 4th 10, 35 (1998) .............................................................................20

*J-M Mfg. Co., Inc. v. Phillips & Cohen LLP*,
247 Cal. App. 4th 87, 102 (2016) .........................................................................20

*Kar v. Lincoln Auto. Fin. Servs.*,
2024 U.S. Dist. LEXIS 208233, at *6–8 (C.D. Cal. 2024)............................19, 28

*Knievel v. ESPN*,
393 F.3d 1068, 1075–76 (9th Cir. 2005) ...........................................14, 15, 16, 24

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal.4th 1134, 1153 (2003)...............................................................21, 22, 30

*Letter Carriers v. Austin*,
418 U.S. 264, 283 (1974) ......................................................................................17

*Levinsky's, Inc. v. Wal-Mart Stores, Inc.*,
127 F.3d 122, 128 (1st Cir. 1997)...................................................................14, 24

*MacLeod v. Tribune Publishing Co.*,
52 Cal. 2d 536, 548–550 (1959)...........................................................................17

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

5845454.1

7

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

*Masson v. New Yorker Magazine,*
501 U.S. 496, 510–511, 111 S.Ct. 2419 (1991) ..................................................... 20

*McGarry v. University of San Diego,*
154 Cal. App. 4th 97, 112 (2007) ......................................................................... 17

*Med. Lab Mgmt. Consultants v. ABC,*
306 F.3d 806, 821 (9th Cir. 2002) ....................................................................... 14

*Micro Solutions, Inc. v. TAT Capital Partners, Ltd.,*
82 Cal. App. 5th 992, 1002 (2022) ...................................................................... 19

*Milkovich v. Lorain Journal Co.,*
497 U.S. 1, 20 (1990)..............................................................................14,15, 24

*Mosafer, Inc. v. Broidy,*
2023 U.S. App. LEXIS 31757, at *9–11 ............................................................ 278

*Muddy Waters, LLC v. Superior Court,*
62 Cal. App. 5th 905, 922–23 (2021) .................................................................. 29

*Musale v. Sutton Nat'l Ins. Co.,*
2025 Cal.Super. LEXIS 80006 ............................................................................ 26

*Mutual Pharm. Co. v. Ivax Pharms., Inc.,*
459 F. Supp. 2d 925, 932 (C.D. Cal. 2006) ........................................................ 26

*N. Star Int'l v. Ariz. Corp. Comm'n,*
720 F.2d 578, 581 (9th Cir. 1983) ....................................................................... 23

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers,*
795 F.3d 1124, 1133 (9th Cir. 2015) ................................................................... 22

*Navellier v. Sletten,*
29 Cal. 4th 82, 88-89 (2002) ............................................................................... 13

*New Show Studios LLC v. Needle,*
2014 U.S. Dist.LEXIS 197422, at *9–11 (C.D. Cal. 2014) ................................. 27

*New York Times v. Sullivan,*
376 U.S. 254, 279–280, 84 S.Ct. 710 (1964) ...................................................... 20

*NL Indus., Inc. v. Kaplan,*
792 F.2d 896, 898 (9th Cir. 1986) ....................................................................... 23

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress,*
890 F.3d 828, 834 (9th Cir. 2018) ....................................................................... 12

*Reed v. Gallagher,*
248 Cal. App. 4th 841 (2016) .............................................................................. 18

*Ringler Assocs. Inc. v. Md. Cas. Co.,*
80 Cal. App. 4th 1165 (2000) .............................................................................. 18

*Ryan S. v. UnitedHealth Grp., Inc.,*
98 F.4th 965, 972 (9th Cir. 2024) ................................................................... 19, 28

*Sanders v. Walsh,*
219 Cal.App.4th 855, 873 (2013) .................................................................... 20, 21

*Soukup v. Law Offices of Herbert Hafif,*
39 Cal. 4th 260, 291 (2006) ................................................................................. 13

*Sprewell v. Golden State Warriors,*
266 F.3d 979, 988 (9th Cir. 2001) ....................................................................... 23

5845454.1

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW
WGM

*St. Amant v. Thompson*,
  390 U.S. 727, 731, 88 S.Ct. 1323 (1968) ...............................................................20

*Trevari Media, LLC v. Colasse*,
  758 F. Supp. 3d 1175, 1181 (C.D. Cal. 2024) .......................................................19

*Unelko Corp. v. Rooney*,
  912 F.2d 1049, 1058 (9th Cir. 1990) ......................................................14, 17, 18

**Statutes**

15 U.S.C. §1125(a).................................................................................................25

§ 1125(a)(1)(A) .....................................................................................................25

§1125(a)(1)(B) .......................................................................................................25

Cal. Civ. Code § 45a .......................................................................17, 19, 27, 28

Cal. Code Civ. Pro. § 425.16(b)(1).................................................................12, 13

**Federal Statutes**

Federal Rule of Civil Procedure 12(b)(6)..........................................12, 23, 28, 29, 30

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This lawsuit targets core First Amendment protections by seeking to punish Defendant Learnmore Mwanyenyeka aka Learnmore Jonasi ("Jonasi"), a professional comedian, for comedic and satirical speech. Plaintiff Lebohang Morake (a.k.a. Lebo M) ("Plaintiff") challenges a joking translation made on a comedy podcast, the *One54 Africa* podcast (the "Podcast"), arguing that it gives rise to defamation and related torts—an approach that, if accepted, would endanger parody, humor, and cultural commentary whenever a public figure dislikes the joke.

Plaintiff's claims stem from lyrics he wrote for the opening of the song "Circle of Life" for the animated and live action films, *The Lion King*. Specifically, Plaintiff asserts the phrase "Nants'ingonyama bagithi Baba," is royal praise poetry. On the Podcast, Jonasi jokingly translated the chant as "Look, there's a lion. Oh my god" (the "Translation"). Plaintiff admits the translation was a joke, yet brings this action in direct violation of the First Amendment.

The claims also fail for the independent reason that the Translation is not provably false, as multiple public sources predating the podcast translate the lyric as "Here comes a lion," and even mainstream commentary has criticized the language as simplistic. This action is precisely the sort of retaliatory lawsuit California's anti-SLAPP statute was enacted to prevent. Because Plaintiff cannot demonstrate any probability of prevailing, the Complaint must be dismissed without leave to amend.

## II.    STATEMENT OF ALLEGED FACTS

Plaintiff alleges that he is a world-renowned, Grammy Award-winning composer, producer, and performer. Complaint, ¶ 5. For more than three decades, Plaintiff has been internationally recognized for his contributions to film and musical culture, most notably as the composer and performer of the opening chant *"Nants'ingonyama bagithi Baba"* featured in Disney's *The Lion King* (1994) and its 2019 live-action adaptation (the "Film"). *Id*. Plaintiff alleges the chant is a work of

5845454.1

10

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

royal praise poetry rooted in the isiZulu and isiXhosa languages and traditions, meaning *"All hail the king; we bow in the presence of the king." Id.*, ¶¶ 8-9.

Jonasi is a comedian and digital content creator who performs stand-up comedy and publishes audio-visual content for commercial gain through social media platforms, podcasts, live performances, and related merchandise.  Complaint, ¶ 6.  On February 25, 2026, Jonasi also appeared as a guest on the *One54 Africa* podcast, a widely followed online program distributed through YouTube and other platforms.  *Id.* During Jonasi's appearance on *One54 Africa*, Jonasi addressed the opening chant from *The Lion King* and asserted that the phrase *"Nants'ingonyama bagithi Baba"* translates to *"Look, there's a lion. Oh my god." Id.*, ¶ 10.  Plaintiff alleges Jonasi presented this statement not as comedy, satire, or speculation, but as a matter of linguistic fact in a conversational and informational context.  *Id.*, ¶¶ 11-13.  Plaintiff further alleges the segment was not framed as a stand-up routine, and Jonasi positioned himself as an authority on the Zulu language and when questioned or challenged during the discussion, Jonasi doubled down on the accuracy of his false translation.  *Id.*, ¶¶ 11-13.

Clips from Jonasi's podcast appearance were subsequently published on YouTube and disseminated across social media platforms, reaching millions of viewers worldwide.  *Id.*, ¶¶ 13, 26.  Plaintiff alleges Jonasi continued to repeat and amplify the false translation through social media and related content.  *Id.*

After the viral spread of Jonasi's statements, Plaintiff personally contacted Jonasi through Instagram direct messages informing Jonasi that the translation he was using was allegedly false, explained the correct meaning of the chant, and requested that Jonasi cease misrepresenting the phrase.  Complaint, ¶¶ 14-21.  Plaintiff alleges that notwithstanding Plaintiff's notice and correction, Jonasi refused to retract the false translation or stop using it.  *Id.*  Jonasi allegedly stated that he intended to continue making the same misrepresentations for years into the future.  *Id.*, ¶¶ 14-21.

Plaintiff alleges that Jonasi's conduct constitutes a misleading representation of fact made in commerce, causing confusion regarding the meaning, provenance, and

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

cultural significance of Plaintiff's work. *Id.*, ¶ 23. Plaintiff further alleges that Jonasi's false statements disparage Plaintiff's professional reputation, undermine the perceived authenticity and quality of Plaintiff's composition, and damage Plaintiff's standing as a cultural authority and composer. *Id.*, ¶¶ 27-28.

As a result of Jonasi's statements, Plaintiff alleges that audiences have confronted him during European tours regarding the false translation and that the misinformation has generated xenophobic backlash necessitating additional security measures. *Id.*, ¶ 47. Plaintiff further alleges that Jonasi has profited commercially from the controversy while simultaneously threatening Plaintiff's long-standing business relationship with Disney and other prospective economic opportunities. *Id.*, ¶¶ 28, 42, 48.

## III.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE

Under California's anti-SLAPP statute, defendants may move to strike a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitutions in connection with a public issue." Cal. Code Civ. Pro. § 425.16(b)(1). Such motions may be brought in Federal Court against state law claims[1] and may challenge either the legal or factual sufficiency of a claim. *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress,* 890 F.3d 828, 834 (9th Cir. 2018). Where an anti-SLAPP challenges the factual sufficiency, the Federal Rule of Civil Procedure 56 standard will apply, and, where an anti-SLAPP challenges the legal sufficiency, the Federal Rule of Civil Procedure 12(b)(6) standard applies. *Id.*

///

---

[1] Plaintiff first claim is for alleged violations of the Federal Lanham Act so Jonasi's Anti-SLAPP motion is not directed towards that claim. All of Plaintiff's other claims are state law claims and subject to the Jonasi's Anti-SLAPP Motion.



**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

In determining an anti-SLAPP motion, a court undertakes a two-step analysis. *Equilon Enterprises, LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). First, the court decides whether the defendant has made a threshold showing that the challenged claim arises from conduct taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal. Code Civ. Pro. § 425.16(b)(1); *Brill Media Co., LLC v. TCW Group, Inc.*, 132 Cal. App. 4th 324, 339 (2005). Second, if the court finds such a showing has been made, it then determines whether Plaintiff has demonstrated a probability of prevailing on the claim. *Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (2002). Under section 425.16(b)(2), the court reviews the pleadings and affidavits without weighing credibility, but considers defendants' evidence to determine whether it defeats the plaintiff's showing as a matter of law. *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 291 (2006).

### A. All Of Plaintiff's Allegations Arise From Jonasi's Joke, Which Are Protected By The First Amendment

To determine whether conduct is "in connection with" an issue of public interest, a court must consider both the context and the content of the statements. *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 149 (2019). Here, Plaintiff cannot dispute that the conduct at issue in the Complaint was made or done "in connection with a public issue or an issue of public interest" because the crux of Plaintiff's allegations is Jonasi's speech on the Podcast. Complaint, ¶¶ 9-12.

///
///
///
///
///
///
///

5845454.1

13

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

**B.** **Plaintiff Cannot Present Any Evidence Showing That Any Of His Claims Have Minimal Merit[2]**

**1.** **The First Amendment Bars All of Plaintiff's State Law Claims**

Courts recognize that safeguarding exaggeration, parody, rhetorical hyperbole, and non-literal commentary is essential to preserving robust public debate. *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 128 (1st Cir. 1997). So, the United States Supreme Court has long held that the First Amendment protects statements that "cannot reasonably be interpreted as stating actual facts." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (quoting *Hustler Magazine v. Falwell*, 485 U.S. 46, 50 (1988)). For this reason, courts evaluating defamation-based claims consistently examine the totality of the circumstances, including context, audience expectations, tone, and format, to determine whether a statement could reasonably be understood as factual and have found that where a reasonable audience would recognize the statements as humor, parody, or rhetorical hyperbole, they cannot form the basis of defamation, trade libel, or related claims.[3] *Knievel v. ESPN*, 393 F.3d 1068, 1075–76 (9th Cir. 2005); *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157–58 (9th Cir. 2021); *Couch v. San Juan Unified Sch. Dist.*, 33 Cal. App. 4th 1491,

---

[2] Any request for discovery should be denied because all the foundational issues are in Plaintiff's sole possession or the public domain.

[3] Claims which are similar to defamation, such as trade libel and tortious interference with contractual or prospective relationships, "are subject to the same [F]irst [A]mendment requirements that govern actions for defamation." *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990); *see also Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) (applying *Unelko*'s holding to actions for intentional interference with economic relationships and for prospective economic advantage); *Med. Lab Mgmt. Consultants v. ABC*, 306 F.3d 806, 821 (9th Cir. 2002) (holding that tortious interference causes of action are subject to First Amendment requirements); *Films of Distinction, Inc. v. Allegro Film Productions, Inc.*, 12 F. Supp. 3d. 1068, 1082 (C.D. Cal. 1998) (dismissing trade libel claims because disputed statements were opinions protected under the First Amendment).

---

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

1500 (1995).  Courts have extended First Amendment protection to such statements in recognition of "the reality that exaggeration and non-literal commentary have become an integral part of social discourse." *Levinsky's*, 127 F.3d at 128.  By protecting speakers whose statements cannot reasonably be interpreted as allegations of fact, courts "provide[] assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich*, 497 U.S. at 20 (quoting *Falwell*, 485 U.S. at 53-55).

By way of example, in *Knievel*, 393 F.3d at 1075–77, the plaintiffs sued defendant for posting on its website a photograph of the stuntman with his arms around his wife and an identified woman, and the caption used the word "pimp."  The Court rejected the plaintiffs argument that, in publishing the photograph with the "pimp" caption, the defendant intended to charge the stuntman with immoral behavior.  *Id.*   In affirming the dismissal, the Ninth Circuit found that, given the satirical, risqué, and sophomoric slang found on the rest of the website, the word "pimp" could not be reasonably interpreted as a criminal accusation.  *Id.*

Similarly, here, it is undisputed that all of Jonasi's actions were comedic, satiric, and hyperbolic all of which are protected by the First Amendment.  Plaintiff admits Jonasi is a comedian and that the comments at issue were part of his comedy act.  See Request for Judicial Notice ("RJN"), Exh. "A" [Podcast Clip]; Declaration of Bryan M. Sullivan ("Sullivan Decl."), ¶ 2; Complaint, ¶¶ 6, 10-13.  Indeed, even Plaintiff alleges that "Jonasi's translation to "Look, there's a lion. Oh my god" is a "fabricated, trivializing distortion, ***meant as a sick joke***…" and characterized Jonasi's translation as "mockery".  Complaint, ¶¶ 9 (5:12-15), 25 (10:2-3).  Jonasi further states that the Translation was made as part of his comedy act and was not intended to be understood as a solemn or authoritative linguistic translation; rather, his discussion of the Song Lyric was delivered in the same comedic tone and persona that characterizes his act and was intended as humor and comedic commentary.

5845454.1

15

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

Declaration of Learnmore Mwanyenyeka aka Learnmore Jonasi ("Jonasi Decl."), ¶ 10. Taken as a whole, no reasonable listener would interpret the statements as factual representations rather than humorous commentary. See, e.g., *Dickinson v. Ryan Seacrest Enters., Inc.*, 2019 U.S. Dist. LEXIS 150174 (C.D. Cal. 2019); *Knievel*, 393 F.3d at 1075–76; *Maddow*, 8 F.4th at 1157–58.

Realizing that the First Amendment bars his claim, Plaintiff tries to circumvent that bar by arguing in conclusory fashion that Jonasi's Translation is false and that Jonasi knew it was false and intended to state true facts on the Podcast. Complaint, ¶¶ 6, 11, 35. But, Plaintiff is doing exactly what the Ninth Circuit rejected in *Kneivel*—taking just the single moment and ignoring the overall context. Given the entire context of the Podcast show, which is notably hosted by a comedian and which consistently publishes comedic content, Jonasi's Translation was plainly comedic, satirical, and hyperbolic for the sake of a joke. RJN, Exh. "A" [Podcast Clip]; Sullivan Decl., ¶ 2; Jonasi Decl., ¶¶ 4-6, 10.

Furthermore, Jonasi's Translation is not false. Jonasi speaks Zulu conversationally and has understood that the lyric "Nants'ingonyama bagithi Baba" literally translates to "Look, there's a lion. Oh my god." Jonasi Decl., ¶ 7. Furthermore, the Translation is supported by public sources pre-existing Jonasi's February 25, 2026 podcast appearance. Jonasi Decl., ¶¶ 8-9. By way of example, in a January 22, 2018 article, the Song Lyric was translated as "Here comes a lion, father, Oh, yes, it's a lion." RJN, Exh. "B"; Sullivan Decl., ¶ 3; Jonasi Decl., ¶¶ 8-9. As another example, in a July 22, 2019 article, the Song Lyric was translated as "Here comes a lion, father, Oh, yes, it's a lion, a lion we're going to conquer, a lion, a lion and a leopard come to this open place." RJN, Exh. "C"; Sullivan Decl., ¶ 4; Jonasi Decl., ¶¶ 8-9. Indeed, in that same 2019 article, two of the actors from the live action version of the Film noted this translation and described the lyrics as "lazily written" and that they "weren't hugely creative." *Id*. Further, in several publicly available translation services (i.e., Lyric Translates, Google translate or Microsoft Co-Pilot),

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

the Song translates similarly to "Here comes a lion, father, Oh, yes, it's a lion." RJN, Exh. "D"-"F"; Sullivan Decl., ¶¶5-7; Jonasi Decl., ¶¶7-9. Indeed, Plaintiff admits that "'ingonyama' can literally translate to 'lion' in Zulu. Complaint, ¶ 9 (5:8). Plaintiff thus cannot present any evidence that Jonasi's translation is false, which is required for any of Plaintiff's claims to overcome the First Amendment. *See Unelko Corp.*, 912 F.2d at 1058 ("a factual statement need only be "substantially true" to be protected from a defamation claim"); *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359 (1999) (statements in question were not defamatory as a matter of law because they were not provably false).

Accordingly, the Anti-SLAPP Motion should be granted.

**2.** **Plaintiff Does Not Have Any Evidence Supporting His Defamation Per Se Claim**

Defamation requires a false, unprivileged publication that exposes the plaintiff to hatred, contempt, ridicule, or disgrace, or tends to injure the plaintiff in an occupation or profession. *McGarry v. University of San Diego*, 154 Cal. App. 4th 97, 112 (2007); Cal. Civ. Code § 45a. Statements that are defamatory on their face are libelous per se, as are statements that convey a defamatory meaning by implication that an ordinary listener would understand without extrinsic facts. *McGarry*, 154 Cal. App. 4th at 112; *MacLeod v. Tribune Publishing Co.*, 52 Cal. 2d 536, 548–550 (1959). By contrast, if the defamatory meaning depends on knowledge of facts not commonly known, the statement is defamatory *per quod* and requires pleading and proof of special damages. *McGarry*, 154 Cal. App. 4th at 112; *Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 387 (1986).

Further, "[t]he sine qua non of recovery for defamation … is the existence of falsehood." *McGarry*, 154 Cal. App. 4th at 112 (quoting *Letter Carriers v. Austin*, 418 U.S. 264, 283 (1974), italics omitted). Notably, a defendant need not prove the literal truth of every word of an alleged defamatory statement so long as the substance, "gist," or "sting" of the charge is true and minor inaccuracies, semantic distinctions, or slight

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

exaggerations do not render a statement false if they would not have a different effect on the reader or listener than the truth would have produced. *Ringler Assocs. Inc. v. Md. Cas. Co.*, 80 Cal. App. 4th 1165 (2000); *Hughes v. Hughes*, 122 Cal. App. 4th 931 (2004); *Unelko Corp.*, 912 F.2d at 1057 (a factual statement need only be substantially true to be protected from a defamation claim). Courts have repeatedly reaffirmed that inconsequential errors do not defeat the defense of substantial truth, and that liability does not turn on hypertechnical or immaterial discrepancies. *Reed v. Gallagher*, 248 Cal. App. 4th 841 (2016); *Bently Reserve LP v. Papaliolios*, 218 Cal. App. 4th 418 (2013); *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141 (2013).

Here, Plaintiff's defamation claim lacks evidence for several reasons. First, Plaintiff cannot provide any evidence of defamation per se because Jonasi's statements on the Podcast make no reference to Plaintiff at all. RJN, Exh. "A"; Sullivan Decl., ¶ 2; Jonasi Decl., ¶¶ 5-8, 12.

Second, it is clearly evident from the overall context of the Podcast that a reasonable person would not find Jonasi's Translation to be defaming Plaintiff. See *id.*; Jonasi Decl., ¶¶ 5-8, 12. Plaintiff's name does not even come up and Jonasi's translation does not disparage Plaintiff as a songwriter. *Id.*

Third, substantial evidence demonstrates that Plaintiff has no evidence that Jonasi's Translation is proveably false. As discussed above, Jonasi's translation of the Song is supported by public sources that existed prior to Jonasi's February 25, 2026 podcast or that are translations from reputable sources. RJN, Exh. "B"-"F"; Sullivan Decl., ¶¶ 3-7; Jonasi Decl., ¶¶ 7-9. Further, at no point did Jonasi represent himself as a linguistic scholar, cultural historian, or expert in isiZulu or isiXhosa language traditions, nor did he claim that his statement was definitive or authoritative cultural translation. RJN, Exh. "A"; Sullivan, ¶ 2; Jonasi Decl., ¶ 11.

Finally, because Jonasi did not defame Plaintiff personally (and is being sued for his translation of the Song), California law requires Plaintiff to plead and prove special damages which must consist of specific, quantifiable pecuniary losses—not

EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
ATTORNEYS AT LAW

generalized reputational harm.  Cal. Civ. Code § 45a; *Ryan S. v. UnitedHealth Grp., Inc.*, 98 F.4th 965, 972 (9th Cir. 2024) (affirming dismissal where damages allegations were conclusory and implausible); *Kar v. Lincoln Auto. Fin. Servs.*, 2024 U.S. Dist. LEXIS 208233, at *6–8 (C.D. Cal. 2024) (same). Plaintiff cannot prove any specific lost business opportunities, terminated contracts, cancelled engagements, or concrete financial losses attributable to Jonasi's Translation.

Accordingly, Plaiuntiff's defemation per se claim must be struck.

### 3. Plaintiff Does Not Have Any Evidence Supporting His Trade Libel Claim

Similar to defamation per se, trade libel is a narrow tort under California law requiring a false statement of fact that specifically disparages the quality of the plaintiff's goods or services.  *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 291–92 (2014); *Trevari Media, LLC v. Colasse*, 758 F. Supp. 3d 1175, 1181 (C.D. Cal. 2024). To establish trade libel, a plaintiff must prove: (1) a false and disparaging statement about the quality of their goods or services, (2) publication to a third party, (3) knowledge of the falsity or reckless disregard for the truth, (4) inducement of others not to deal with the plaintiff, and (5) actual pecuniary damage. *Trevari Media*, 758 F.Supp.3d at 1181; *ZF Micro Solutions, Inc. v. TAT Capital Partners, Ltd.*, 82 Cal. App. 5th 992, 1002 (2022).  Here, for the same reasons that Plaintiff's defamation per se claim fails, Plaintiff's trade libel claim fails, including, without limitation, the following: (i) Jonasi merely translated non-English words from the Song and did not disparage the Song in any way; (ii) A reasonable listener would not understand Jonasi's Translation to be defamatory or disparaging of the Song; (iii) Substantial evidence that pre-dates the February 25, 2026 podcast supports Jonasi's Translation; (iv) Plaintiff has no evidence that Jonasi induced anyone to not deal with Plaintiff; and (v) Plaintiff cannot identify any concrete lost business opportunities.

///

///



5845454.1

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

**4.      Plaintiff Cannot Prove That Jonasi Acted With Actual Malice In Making The Statements About The Song's Translation As Required For The Defamation Per Se And Trade Libel Claims**

Where the plaintiff is a public figure or limited public figure, that plaintiff cannot recover for defamation per se or trade libel unless the plaintiff proves, by clear and convincing evidence that the libelous statement was made with "actual malice" "that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1259 (2017) (footnotes and internal citations omitted); *see also Masson v. New Yorker Magazine,* 501 U.S. 496, 510–511 (1991); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *New York Times v. Sullivan*, 376 U.S. 254, 279–280 (1964); *Hartford Cas. Ins. Co.*, 59 Cal.4th at 291 (trade libel further requires pleading that the defendant acted with actual malice—that is, knowledge of falsity or reckless disregard for the truth); *J-M Mfg. Co., Inc. v. Phillips & Cohen LLP*, 247 Cal. App. 4th 87, 102 (2016) (same).  Actual malice "does not require that the reporter hold a devout belief in the truth of the story being reported, only that he or she refrain from either reporting a story he or she knows to be false or acting in reckless disregard of the truth." *Jackson v. Paramount Pictures Corp.,* 68 Cal. App. 4th 10, 35 (1998);  *Sanders v. Walsh*, 219 Cal. App. 4th 855, 873 (2013).

Plaintiff is undeniably and admittedly a public person as the songwriter for the Song and as Plaintiff describes himself, "a stalwart the Disney collection for more than 32 years…."  Complaint, ¶¶ 6, 27; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974); *Copp v. Paxton*, 45 Cal. App. 4th 829, 845-46 (1996).  But, Plaintiff cannot present any evidence of "actual malice" because, among other reasons, substantial evidence supports Jonasi's Translation that pre-date the Podcast.  RJN, Exh. "B"-"F"; Sullivan Decl., ¶¶ 3-7; Jonasi Decl., ¶¶ 7-9.  As a result, his Translation is not false and he was not acting with reckless disregard.  See *Masson,* 501 U.S. at 510–511; *St.*

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

*Amant*, 390 U.S. at 731; *Sullivan*, 376 U.S. at 279–280; *Jackson,* 68 Cal. App. 4th at 35; *Sanders*, 219 Cal. App. 4th at 873.

Accordingly, the Court should grant Jonasi's Anti-SLAPP Motion in regard to the defamation per se and trade libel claim.

### 5.   Plaintiff's Claim for Intentional Interference with Prospective Economic Advantage Fails

A claim for intentional interference with prospective economic advantage requires proof of six elements: (i) an existing economic relationship between the plaintiff and a third party with a probability of future economic benefit; (ii) the defendant's knowledge of that relationship; (iii) the defendant's engagement in independently wrongful conduct, beyond the interference itself; (iv) the defendant's intent to disrupt the relationship, or knowledge that disruption was substantially certain to occur; (v) actual disruption of the relationship; and (vi) economic harm proximately caused by the defendant's conduct. *Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.*, 71 Cal. App. 5th 528 (2021); *Crown Imports, LLC v. Superior Court*, 223 Cal. App. 4th 1395 (2014). Plaintiff has no evidence supporting any of these required elements.

Plaintiff alleges only a long-standing professional relationship with Disney and speculative conerns "whether Disney will call on his services again". Complaint, ¶¶ 27, 56. This is insufficient as a matter of law. A generalized hope or expectation of future work does not constitute the type of probable economic relationship required to sustain the claim. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003). California courts consistently reject interference claims based on speculative or attenuated prospects of future business. *See George v. eBay, Inc.*, 71 Cal. App. 5th 620, 635–36 (2021) (dismissing claim where plaintiffs relied on unidentified, potential "repeat buyers"); *Bio Medical Research, Ltd. v. Thane Int'l, Inc.*, 249 F. App'x 539, 541 (9th Cir. 2007) (tort does not protect potential relationships with hypothetical customers). Because Plaintiff has not alleged a specific, existing economic relationship

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

likely to yield a concrete benefit, he necessarily cannot satisfy any of the remaining elements, all of which depend on such a relationship.

Plaintiff also lacks evidence that Jonasi knew of any ongoing relationship between Plaintiff and Disney, and instead relies on general, conclusory statements in this regard.  Complaint, ¶ 59.  The mere fact that Plaintiff wrote a song for a Disney film does not establish a continuing economic relationship, let alone Jonasi's knowledge of one.  Jonasi had no such knowledge.  Jonasi Decl., ¶ 15.  Moreover, Plaintiff lacks evidence of Jonasi's intent to disrupt any such economic relationsips, and once again simply asserts conclusory allegations in this regard.  Complaint, ¶¶ 6, 11, 23, 27, 34.  Jonasi had no such intent.  Jonasi Decl., ¶ 15.

Nor can Plaintiff show any actual disruption of a relationship.  *See Korea Supply*, 29 Cal.4th at 1153.  To Jonasi's knowledge, Disney has not canceled a project involving Plaintiff, terminated negotiations, declined a specific request for Plaintiff's services, altered any contractual terms, or made any adverse decision regarding Plaintiff based on the Translation.  Jonasi Decl., ¶ 15.

The claim independently fails because Plaintiff cannot establish that Jonasi engaged in conduct that was "wrongful by some legal measure other than the fact of interference itself."  *Korea Supply*, 29 Cal.4th at 1159; *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 671 (9th Cir. 2023).  Plaintiff identifies no constitutional, statutory, regulatory, or common-law violation separate from the alleged interference.  *See Drink Tank Ventures*, 71 Cal. App. 5th at 547–48.  Where, as here, the alleged wrongfulness consists solely of the same conduct alleged to constitute interference, the claim fails as a matter of law.  *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1133 (9th Cir. 2015).

Finally, California law requires proof of economic harm proximately caused by the defendant's conduct.  *Korea Supply*, 29 Cal.4th at 1165; *Bio Medical Research*, 249 F. App'x at 541.  Plaintiff cannot connect the Translation to any specific lost

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

opportunity, disrupted relationship, or adverse third-party decision. Absent evidence of causation, intent, and quantifiable harm, Plaintiff's claim fails.

### C.    The Anti-SLAPP Motion Should Also Be Granted Because The Complaint Fails To State A Claim Against Jonasi

In addition to the lack of evidence described above, the Anti-SLAPP Motion should be dismissed because, as explained in Section IV of this Motion, Plaintiff cannot state any causes of action against Jonasi.

### IV.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must dismiss a cause of action that fails to state a claim upon which relief can be granted. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). In considering whether the allegations in the complaint are sufficient to state a claim, courts take all material allegations as true and construe them in the light most favorable to the non-moving party. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). A court, however, will not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Accordingly, a pleading that offers labels and conclusions, or a formulaic recitation of a cause of action with conclusory allegations, is not sufficient; rather, a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In sum, to survive a motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678.

The Complaint relies almost entirely on conclusory assertions of intent and wrongdoing (e.g., "malicious," "willful," "reckless"), untethered from any concrete factual allegations connecting any specific statement to the elements of any cause of action or to any non-speculative damages, which alone is fatal. Compounding these defects, the Complaint inconsistently characterizes the challenged remarks as both

EARLY SULLIVAN WRIGHT GIZER & McRAE LLP ATTORNEYS AT LAW

literal factual assertions and as comedy or satire—an internal contradiction that alone precludes liability and underscores the implausibility of Plaintiff's claims. Such inconsistencies fall short of the plausibility requirement articulated by the Ninth Circuit. See *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011).

**A.      The First Amendment Bars All Of Plaintiff's Claims Because Jonasi's Statements Are Constitutionally Protected Speech**

As discussed in Section III.B, courts have long held that exaggeration, parody, rhetorical hyperbole, and nonliteral commentary are integral to public discourse and protected by the First Amendment when they cannot reasonably be understood as stating actual facts. *Milkovich*, 497 U.S. at 20 (quoting *Falwell*, 485 U.S. at 50); *Levinsky's*, 127 F.3d at 128. In evaluating defamation-based claims, courts examine the totality of the circumstances—including context, audience expectations, tone, and format—to determine whether statements could reasonably be understood as factual and where a reasonable audience would recognize statements as humor, parody, or rhetorical hyperbole, they are not actionable. *Knievel*, 393 F.3d at 1075–76; *Maddow*, 8 F.4th at 1157–58; *Couch*, 33 Cal. App. 4th at 1500.

Here, Plaintiff's claims arise entirely from conduct that is concededly comedic, satiric, and hyperbolic—all speech squarely protected by the First Amendment. Plaintiff admits that Jonasi is a comedian and that the challenged remarks were made as part of a comedy podcast. Complaint, ¶¶ 6, 10–13. Like the plaintiff in *Knievel*, Plaintiff improperly isolates individual remarks while ignoring the broader context. Viewed as a whole, the Podcast is a comedy show, which is hosted by a comedian, and Jonasi's remarks about the Song were plainly exaggerated, humorous, and non-literal. RJN, Exh. "A"; Sullivan Decl., ¶ 2; Jonasi Decl., ¶¶ 4-10. Indeed, Plaintiff himself alleges that the translation was "fabricated," "trivializing," "mockery," and "meant as a sick joke," confirming that no reasonable listener would have understood the statements as factual assertions. Complaint, ¶ 9. Independently,

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

the claim also fails because Jonasi's translation is not false.  Jonasi Decl., ¶¶ 6-9.  Plaintiff admits the key term "ingonyama" literally translates to "lion," and multiple public sources—predating the Podcast—translate the lyric as "Here comes a lion, father, oh yes, it's a lion."  RJN, Exhs. "C-F"; Sullivan Decl., ¶¶ 4-7.  Even mainstream commentary has criticized the lyric as simplistic.  RJN, Exhs. "B-C"; Sullivan Decl., ¶¶ 3-4; Jonasi Decl., ¶ 8.  A statement need only be substantially true to receive constitutional protection.  *Rooney*, 912 F.2d 1049; *Eisenberg*, 74 Cal. App. 4th 1359.  Because Jonasi's remarks were protected speech and not provably false, all of Plaintiff's claims fail as a matter of law and the Complaint must be dismissed without leave to amend.

**B.      Plaintiff's Claim For Misleading Representation In Violation Of The Lanham Act Fails Because Plaintiff Has Not And Cannot Allege That Jonasi's Statement Was For Commercial Purposes**

Plaintiff's claim for misleading representation in violation of 15 U.S.C. §1125(a) of the Lanham Act fails to state a plausible basis for relief and must be dismissed for several reasons.

First, the Complaint impermissibly conflates multiple, separate, and distinct theories without clearly identifying which statutory prong is at issue.  Section 43(a) draws a critical distinction between claims for false designation of origin under §1125(a)(1)(A) and claims for false advertising or misleading description under §1125(a)(1)(B).  Yet the Complaint alternates among allegations of consumer "confusion," "dilution," "riding on coattails," "theft by mockery," and "misleading description," without pleading facts tailored to any particular cause of action.  This lack of clarity alone warrants dismissal.  See *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003) (rejecting expansive Lanham Act theories untethered from statutory text).

Second, even assuming Plaintiff intends to assert a misleading representation or false advertising claim under § 1125(a)(1)(B), the Complaint fails to allege facts

sufficient to establish that Jonasi's statements were made in "commercial advertising or promotion," a threshold requirement under controlling Ninth Circuit law. *See Mutual Pharm. Co. v. Ivax Pharms.*, Inc.,459 F. Supp. 2d 925, 932 (C.D. Cal. 2006) (central focus of the Lanham Act is to prevent false or misleading representations in promoting a product in the marketplace). Commercial advertising or promotion requires: (i) commercial speech; (ii) by a defendant in commercial competition with the plaintiff; (iii) for the purpose of influencing consumers to buy the defendant's goods or services; and (iv) sufficiently disseminated to the relevant purchasing public. *Children's Health Defense v. Meta Platforms, Inc.*, 112 F.4th 742, 764 (9th Cir. 2024); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999). The Complaint does not plead any of these elements.

Third, courts consistently hold that podcast commentary, news reporting, and entertainment content are not commercial speech absent allegations that the statements were made for the purpose of promoting a product or service. See *1-800 Get Thin, LLC v. Hiltzik*, 2011 U.S. Dist. LEXIS 81982, at *11–13 (C.D. Cal. July 21, 2011); *Alfasigma USA, Inc. v. First Databank, I-nc.*, 525 F. Supp. 3d 1088, 1101–03 (N.D. Cal. 2021). The only specifically identified publication is a clip from the Podcast posted on YouTube, which Plaintiff characterizes as conversational or informational and not as advertising. Complaint, ¶¶ 10, 12.

Fourth, the Complaint fails to plead commercial competition between the parties. Plaintiff alleges he is a composer while Jonasi is a comedian and does not allege that the Parties operate in the same market, offer competing goods or services, or vie for the same consumers. See *Musale v. Sutton Nat'l Ins. Co.*, 2025 Cal.Super. LEXIS 80006 (Courts applying the Ninth Circuit test routinely dismiss Lanham Act claims where plaintiffs are not competitors and fail to allege facts establishing competition.); *Children's Health Defense*, 112 F.4th at 764-65 (same).

Fifth, Plaintiff fails to identify a relevant purchasing public or allege facts showing that the challenged statements were disseminated to that purchasing public.

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

Allegations that content was broadly available online do not meet the Ninth Circuit's requirement of dissemination targeted to a defined purchasing audience. *Children's Health Defense*, 112 F.4th at 764-65.

Finally, Plaintiff's requests for treble damages, disgorgement, and attorneys' fees are pleaded as conclusory estimates untethered to factual allegations connecting Jonasi's alleged revenues to any purported misleading representation. Such conclusory damages allegations cannot salvage an otherwise deficient Lanham Act claim. *See New Show Studios LLC v. Needle*, 2014 U.S. Dist.LEXIS 197422, at *9–11 (C.D. Cal. 2014).

Accordingly, Plaintiff's Lanham Act claim fails as a matter of law and the Complaint must be dismissed without leave to amend.

### C.    Plaintiff's Second Cause Of Action For Defamation Per Se Fails

Plaintiff's defamation per se claim fails as a matter of law because the Complaint does not allege an actionable defamatory statement.  Most fundamentally, the Complaint does not allege that Jonasi made any statement about Plaintiff or even referenced Plaintiff by name.  Jonasi's alleged "mistranslation" concerns the meaning of foreign-language lyrics in a song, not Plaintiff personally.  A statement that does not concern the plaintiff cannot support a defamation claim, and a disagreement over the translation or interpretation of foreign words—standing alone—cannot form the basis of defamation.

Even setting that defect aside, the claim is not one for defamation per se. A statement is defamatory per se only if its defamatory meaning is apparent on its face, without resort to extrinsic facts, innuendo, or explanation.  Cal. Civ. Code § 45a. Where, as here, the alleged defamatory meaning depends on linguistic interpretation, cultural context, or specialized expertise to determine whether a translation is false or misleading, the statement is not defamatory on its face and thus is not actionable absent well-pleaded special damages.  See *George v. Int'l Soc'y for Krishna Consciousness*, 213 Cal. App. 3d 729, 734 (1989).  The Complaint itself demonstrates this deficiency: determining whether the chant in isiZulu or isiXhosa was "mistranslated" necessarily

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

requires extrinsic explanatory matter, placing the claim outside the scope of defamation per se.

Because the alleged statement is not defamatory on its face, Plaintiff was required to plead special damages—specific, quantifiable pecuniary losses proximately caused by the publication. Cal. Civ. Code § 45a. Plaintiff does not do so. Instead, he alleges only generalized harms without identifying any specific loss to Jonasi's conduct. Such conclusory allegations are insufficient as a matter of law. *Ryan S. v. UnitedHealth Grp., Inc.*, 98 F.4th 965, 972 (9th Cir. 2024); *Kar v. Lincoln Auto. Fin. Servs.*, 2024 U.S. Dist. LEXIS 208233, at *6–8 (C.D. Cal. 2024).

The claim independently fails because Plaintiff also does not plausibly allege falsity or the requisite state of mind. The Complaint's conclusory invocation of "actual malice," unsupported by facts showing knowledge of falsity or reckless disregard for the truth, does not satisfy Rule 8. *Sullivan*, 376 U.S. at 279–80; *Allen v. Sunbelt Commc'ns Co.*, 2008 U.S. Dist. LEXIS 144604, at *10–12 (C.D. Cal. 2008).

Dismissal of the second cause of action under Rule 12(b)(6) is therefore required.

**D.     Plaintiff Fails To State A Claim For Trade Libel**

Trade libel is a narrowly circumscribed tort under California law requiring a false statement of fact that specifically disparages the quality of an identifiable product or service offered by the plaintiff and is "of and concerning" that product with sufficient specificity. *Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964); *Hartford Cas. Ins. Co.*, 59 Cal.4th at 291–92; *Mosafer, Inc. v. Broidy*, 2023 U.S. App. LEXIS 31757, at *9–11. Plaintiff does not meet this threshold. The Complaint rests on alleged mockery, jokes, or mistranslation of lyrics from a well-known cultural work, but it does not plausibly allege that Jonasi made any specific factual representation disparaging the quality, integrity, or characteristics of a concrete product or service offered by Plaintiff. Commentary about song lyrics, chants, or cultural references—particularly in a comedic or satirical context—does not constitute a direct disparagement of commercial goods or services. Nor does trade libel extend to

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
ATTORNEYS AT LAW

opinions, satire, rhetorical hyperbole, or figurative language, all of which fall outside the scope of actionable false statements of fact. *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 393 F. Supp. 3d 968, 982 (N.D. Cal. 2019). The Complaint's repeated characterization of Jonasi as a comedian further underscores that the challenged speech is expressive commentary, not a verifiable factual claim about product quality.

The claim independently fails for multiple additional reasons. General allegations of declining business, strained relationships, or lost royalties are insufficient; Plaintiff must identify specific lost sales or transactions and plausibly allege that Jonasi's statements materially induced third parties not to deal with him. *Muddy Waters, LLC v. Superior Court*, 62 Cal. App. 5th 905, 922–23 (2021). Finally, trade libel requires pleading actual malice—knowledge of falsity or reckless disregard for the truth—which Plaintiff attempts to satisfy only through conclusory labels unsupported by factual allegations tied to each challenged publication. *Hartford*, 59 Cal.4th at 291; *Deerpoint*, 393 F. Supp. 3d at 983. For these independent reasons—failure to allege a specific false disparagement, failure to plead publication with particularity, failure to plead special damages and causation, and failure to plead malice—the Third Cause of Action fails as a matter of law and should be dismissed under Rule 12(b)(6).

**E.      Plaintiff Fails To State A Claim For Intentional Interference With Prospective Economic Advantage**

To state a claim for intentional interference with prospective economic advantage, a plaintiff must allege a specific economic relationship with a third party that carried a probability of future economic benefit, the defendant's knowledge of that relationship, independently wrongful conduct, actual disruption, and economic harm proximately caused by the defendant's acts. *Drink Tank Ventures*, 71 Cal. App. 5th 528; *Crown Imports*, 223 Cal. App. 4th 1395. Plaintiff fails at the threshold. The Complaint alleges only that Plaintiff had a long-standing relationship with Disney and speculative conerns "whether Disney will call on his services again". Complaint, ¶¶

EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW

27, 56.  Such allegations amount to no more than a generalized hope of future work and do not constitute an economic relationship with a probability of future economic benefit.  *Korea Supply*, 29 Cal.4th at 1153.  Courts consistently reject interference claims based on speculative or attenuated expectations of future business, including hypothetical or unidentified customers.  *George*, 71 Cal. App. 5th at 635–36; *Bio Medical Research*, 249 F. App'x at 541.  Because Plaintiff has not alleged a qualifying prospective relationship, the remaining elements necessarily fail.

The claim independently fails because Plaintiff does not allege actual disruption, independently wrongful conduct, or proximate causation.  The Complaint does not allege that Disney canceled a project, terminated negotiations, declined a specific request for services, altered contractual terms, or made any decision in reliance on Jonasi's conduct; speculative allegtions of concerns about "whether Disney will call on his services again" are conjectural and insufficient.  *Korea Supply*, 29 Cal.4th at 1153; Complaint, ¶¶ 27, 56.  Plaintiff also fails to plead conduct that was wrongful by a legal measure other than the alleged interference itself, relying instead on conclusory labels such as "false," "malicious," or "reckless," without alleging facts showing a violation of any independent legal duty.  *Korea Supply*, 29 Cal.4th at 1159; *Name.Space*, 795 F.3d at 1133.  Finally, Plaintiff does not allege economic harm tied to a specific disrupted opportunity or third-party decision, but instead asserts broad reputational and business impacts untethered to any concrete loss.  *Korea Supply*, 29 Cal.4th at 1165; *Bio Medical Research*, 249 F. App'x at 541.  Because Plaintiff fails to allege a qualifying prospective economic relationship, actual disruption, independently wrongful conduct, or proximate causation, the Fourth Cause of Action fails as a matter of law and should be dismissed under Rule 12(b)(6).

///

///

///

///



**ANTI-SLAPP MOTION AND MOTION TO DISMISS**

## V.     CONCLUSION

For the foregoing reasons, the Court should grant Jonasi's Anti-SLAPP Motion and Motion To Dismiss.

Dated:  May 5, 2026               By:_____
                                      BRYAN M. SULLIVAN
                                      (State Bar No. 209743)
                                      bsullivan@earlysullivan.com
                                      ZACHARY C. HANSEN
                                      (State Bar No. 325128)
                                      zhansen@earlysullivan.com
                                      EARLY SULLIVAN WRIGHT
                                        GIZER & McRAE LLP
                                      6420 Wilshire Boulevard, 17th Fl.
                                      Los Angeles, California 90048
                                      Telephone: (323) 301-4660
                                      Facsimile: (323) 301-4676

                                      *Attorneys for Defendant*
                                      *Learnmore Mwanyenyeka*

## CERTIFICATE OF COMPLIANCE

## PURSUANT TO L.R. 11-6.2

The undersigned, counsel of record for Defendant Learnmore Mwanyenyeka aka Learnmore Jonasi, hereby certifies that this brief contains 6,898 words, excluding those portions set forth in L.R. 11-6.1, which complies with the word limit of L.R. 11-6.1.

Dated:  May 5, 2026                    By:_____
                                              BRYAN M. SULLIVAN

5845454.1                              32

**ANTI-SLAPP MOTION AND MOTION TO DISMISS**